IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER HARRIS, | ) | CASE NO.  1:18 CV 01579 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN NEIL TURNER, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Walter Harris ("Harris" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Harris is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Harris*, Cuyahoga County Court of Common Pleas Case No. CR 15-592778.   For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.       Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Harris's conviction as follows:

1

{¶ 2} In 2015, Harris was charged with 28 counts as follows: nine counts of rape, eight counts of kidnapping, six counts of sexual battery, four counts of gross sexual imposition, and one count of attempted rape. The counts were accompanied by various repeat violent offender and sexual motivation specifications. The date of Harris's offenses ranged from March 1, 2012 to June 2014, and the victim was his girlfriend's minor daughter.

{¶ 3} The matter proceeded to trial in April 2016, but the jury was unable to reach a verdict. The case proceeded to a second jury trial in May 2016 on 27 counts because the state dismissed one count of rape prior to the second trial. The repeat violent offender and sexual motivation specifications were tried to the court.

{¶ 4} The following pertinent evidence was presented at trial.

{¶ 5} Harris dated H.S.'s mother. H.S. did not have a stable home life. At first, H.S. and her brother, "E.S.," lived out of state with their mother. Because Harris lived in Cleveland, H.S. would visit with her mother and brother on the weekends. H.S. subsequently lived with her grandmother, her mother in a homeless shelter, and finally with Harris and E.S.

{¶ 6} Harris eventually became the legal guardian of H.S. and E.S. H.S. testified that she thought of Harris as her "father." From 2005 through 2012, H.S. lived with Harris, E.S., and Joanna Wilcox ("Wilcox"), who was dating Harris. Harris and Wilcox's relationship ended in September 2012 and Wilcox moved out. H.S. and Wilcox remained friends.

{¶ 7} When H.S. was in the eighth grade, she discovered she was attracted to girls. Harris found out and was mad. H.S. testified that Harris first assaulted her when she was in the eighth grade and after Harris found out she was gay. One night, Harris called H.S. downstairs. According to H.S., there was a pornographic movie playing on the television, depicting two females. Harris grabbed H.S.'s arm, threw her down onto his bed, and touched her. H.S. testified that although she did not want Harris to be touching her in that way, she was frightened and did not feel that she was able to get away.

{¶ 8} H.S. testified that the next instance occurred toward the beginning of her ninth grade school year. E.S. was at school and H.S. was on the couch. Harris approached her with his pants off and touched her. Again, H.S. was frightened but did not feel like she could leave.

{¶ 9} H.S. testified that after Wilcox moved out, Harris was "lonely" and wanted H.S. and E.S. to sleep in his bedroom. The siblings slept on couch cushions on the bedroom floor. During one of these nights, H.S. remembered she was at a friend's house for the evening. She returned home, fell asleep on the couch cushions, and woke up in Harris's bed without pants. Harris touched her.

2

{¶ 10} H.S. testified that eventually Harris's assaults escalated to sexual intercourse. H.S. testified that one such occurrence took place when she was in the tenth grade, before Harris moved them from their house on East 64th Street to a house on Homer Avenue. H.S. remembered she had been sleeping on the couch because she was sick. During the night, she got up to get a drink of water; when she returned, Harris was sitting on the couch waiting for her. Harris told H.S. to come to his bedroom, where he had sex with her.

{¶ 11} The sexual abuse continued after they moved to the new house. H.S. testified to another instance that occurred shortly after the move, sometime between the Thanksgiving and Christmas holidays. Harris called H.S. into his bedroom and told her that they needed to "mess around." H.S. testified that Harris grabbed her, took off her pants, turned her around, and made her have sex with him.

{¶ 12} According to H.S., the last time Harris assaulted her was toward the end of 2014. She testified that Harris continuously and repeatedly raped and sexually assaulted her until the end of 2014 and would never wear a condom. Instead, Harris bought H.S. the "morning after pill." The state entered into evidence a receipt from Discount Drug Mart, dated September 12, 2014, that detailed the purchase of emergency contraceptive. The state also entered into evidence video surveillance from September 12, 2014, at the same Discount Drug Mart, that showed Harris making a purchase in the pharmacy.

{¶ 13} Veronique White, a Discount Drug Mart pharmacy technician, testified that Harris was a regular customer at the pharmacy. White stated that she personally sold Harris the emergency contraceptive on two or three occasions, and that he told her that he was buying the pills for his daughter.

{¶ 14} According to H.S., Harris gave her these contraceptive pills "too many times to count"; in fact, at one point Harris told H.S. that she needed to go on birth control because he was "tired" of buying her the expensive pills. H.S. told Harris that she did not want to go on birth control because she wanted to date only girls and wanted him to stop.

{¶ 15} H.S. testified she was scared to tell anyone about Harris. At one point, she asked E.S. what he would do if she told him that someone was hurting her. Both H.S. and E.S. testified that E.S. got angry and told H.S. that he would "kill" anyone who hurt her. Because of this response, H.S. decided not to tell her brother about Harris.

{¶ 16} H.S. finally told her girlfriend, C.R., about Harris. H.S. called C.R. after one instance of abuse. C.R. heard H.S. crying on the phone and H.S. confided in C.R. about what Harris had been doing to her. H.S. asked C.R. to keep the abuse a secret, but C.R.'s mother found out and C.R. and her mother reported the abuse to the police.

{¶ 17} Cleveland Police Detective Alan Strickler was assigned to the case. H.S. told the detective that the allegations were false and to throw the case out. H.S. testified that she was scared that if she divulged the abuse, E.S. would be placed in foster care.

{¶ 18} H.S. then confided in Harris's former girlfriend, Wilcox. Wilcox testified that H.S. texted her on October 15, 2014, and asked if she would make H.S. tell if someone was hurting her. Wilcox met with H.S. the next day. H.S. told Wilcox that Harris was forcing her to have sex with him. Wilcox told H.S. that she needed to tell someone right away but H.S. said she did not want to go to the police because she was afraid of Harris. According to Wilcox, H.S. thought people would believe Harris over her and feared for her brother's future.

{¶ 19} Towards the end of December 2014, Harris and H.S. got into an argument over H.S.'s music. H.S. left the house and went to stay with her girlfriend, C.R., without telling Harris where she was going. H.S. called Wilcox and told her that she was finally ready to go to the police and file a report. Wilcox took H.S. to the police station.

{¶ 20} Detective Cindy Bazilius ("Detective Bazilius") interviewed H.S. Detective Bazilius testified that H.S. indicated that the abuse had been going on for several years. According to Detective Bazilius, when she interviews a child victim that has been subjected to frequent abuse, she will try to get the child to focus on a few detailed incidents, rather than trying to remember every single incident. During her interview, H.S. was able to relate specific incidents of abuse to specific years in school and other major life events, rather than specific dates.

{¶ 21} The police secured a search warrant for Harris's house. Detective Bazilius testified that she conducted the search with the knowledge that it was important to look for old towels and clothing in the home and particularly in Harris's bedroom, because H.S. had stated that Harris would often use towels and clothing to clean up after they had sex. Forensic testing conducted on a blue towel taken from the top of Harris's bedroom dresser contained seminal material with a DNA profile that matched Harris's. The police also took Harris's bedding into evidence and forensic testing confirmed that the bedding contained DNA from both Harris and H.S.

{¶ 22} Cuyahoga County Department of Children and Family Services social worker Hope Gula ("Gula") interviewed H.S. Gula testified that in her experience as a social worker in the sex abuse unit, child sex abuse victims often delay disclosure of their abuse. Gula noted that it is common for children to be mistaken about the time elements of the abuse, especially when the abuse occurred frequently over a long period of time. Gula testified that while interviewing H.S., H.S. disclosed to her certain behaviors that Harris possessed that are typically known as "grooming behaviors" in

4

which the level of sexual activity he subjected H.S. to was slowly increased. Gula explained that these activities were consistent with her experience with other victims of sexual abuse.

{¶ 23} The jury found Harris guilty on all counts and the sexual motivation specifications. The court convicted Harris of the repeat violent offender specifications, acquitted him of the sexually violent offender specifications, and sentenced him to a total of 11 years in prison.

*State v. Harris*, 2018-Ohio-578, 107 N.E.3d 658, 661-64 (Ohio App. 8th Dist. Feb. 15, 2018).

## II. Procedural History

### A. Trial Court Proceedings

In March 2015, a Cuyahoga County Grand Jury indicted Harris on multiple counts of rape, attempted rape, sexual battery, gross sexual imposition, and kidnaping. (Doc. No. 6-1, Ex. 2.) Harris pled not guilty. (Doc. No. 6-1, Ex. 3.)

Jury trial commenced on April 5, 2016. (Doc. No. 6-1, Ex. 23). On April 12, 2016, the jury reported it was unable to reach a verdict. (Doc. No. 6-1, Ex. 24.) New counsel was thereafter appointed. (Doc. No. 6-1, Ex. 26.)

On June 22, 2016, Harris filed a *pro se* motion for dismissal based upon the alleged violation of his speedy trial rights. (Doc. No. 6-1, Ex. 28.) Thereafter, on July 25, 2016, Harris filed a *pro se* motion requesting copies of arrest warrants and search warrants. (Doc. No. 6-1, Ex. 29.) On August 17, 2016, Harris filed a *pro se* motion "requesting acquittal for retrial double jeopardy." (Doc. No. 6-1, Ex. 30.) Several months later, on October 6, 2016, Harris, through counsel, filed a motion to suppress evidence. (Doc. No. 6-1, Ex. 31.)

Jury trial commenced for a second time on October 24, 2016. (Doc. No. 6-1, Ex. 35.) On October 28, 2016, Harris was found guilty of eight counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2); five counts of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(5); eight counts of kidnaping in violation of Ohio Rev. Code § 2905.01(A)(4); four counts of gross sexual imposition in violation of Ohio

Rev. Code § 2907.05(A)(1); one count of attempted rape in violation of Ohio Rev. Code § 2923.02/2907.02(A)(2); and one count of attempted sexual battery in violation of Ohio Rev. Code § 2923.02/2907.03(A)(5).  (Doc. No. 6-1, Ex. 36.)  Several of these counts included sexual motivation specifications and findings that the victim was under the age of 18.  (*Id.*)

In an entry journalized on November 22, 2016, Harris was sentenced to an aggregate prison sentence of eleven (11) years.  (Doc. No. 6-1, Ex. 38.)

**B.    Direct Appeal**

Harris, through counsel, filed a timely notice of appeal to the Eighth District Court of Appeals of Ohio.  In his appellate brief, he raised the following assignments of error:

I.    The trial court erred by denying appellant's motion to suppress evidence in violation of his Fourth and Fourteenth amendment rights to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

II.    Appellant's constitutional rights were violated because social worker Gula was permitted to give expert testimony in violation of Evid. R. 702 and testimony that improperly bolstered H.S.'s credibility.

III.    Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

IV.    The convictions were against the manifest weight of the evidence.

V.    Appellant's federal and state constitutional rights were violated and his conviction [sic] should be vacated and dismissed.

VI.    The trial court erred by granting the state's oral motion to amend counts 12-15 [sic] the indictment after the close of the state's case in chief which deprived appellant of a fair trial and violated his due process rights.

(Doc. No. 6-1, Ex. 41.)  The State filed a brief in response.  (Doc. No. 6-1, Ex. 42.)

On July 12, 2017, the appellate court determined the sentencing entry omitted resolution for counts seven, eight, and twenty, and remanded the case to the trial court for an entry resolving all counts.  (Doc. No. 6-1, Ex. 43.)  The trial court issued a corrected entry on August 7, 2017.  (Doc. No. 6-1, Ex. 44.)

On February 15, 2018, the state appellate court affirmed Harris's convictions.  (Doc. No. 6-1, Ex. 45.)  *See also State v. Harris*, 2018-Ohio-578, 107 N.E.3d 658 (Ohio App. 8th Dist. Feb. 15, 2018).

Harris failed to timely appeal to the Supreme Court of Ohio.  (Doc. No. 1-2; *see* Doc. No. 6-1.) On April 17, 2018, Harris, proceeding *pro se*, filed a Motion for Delayed Appeal with the Supreme Court of Ohio.[1]  (Doc. No. 6-1, Ex. 47.)

On June 6, 2018, the Supreme Court of Ohio denied Harris's motion for delayed appeal and dismissed the case.  (Doc. No. 6-1, Ex. 48.)

## C.    Federal Habeas Petition

On June 29, 2018,[2] Harris filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The trial court erred by denying Petitioner's motion to suppress in violation of his Fourth and Fourteenth Amendment rights of the United States Constitution.
>
> **Supporting Facts**:  The blue towel seized by police from Petitioner's home was not specified in the search warrant's command section.  By Ohio law, when this item fails to be in the search warrant it is outside the scope of the search warrant.  Defense made this argument, and the language on the search warrant was so broad that it authorized officers to take any item they wished that might have biological and/or forensic material[.]   Therefore the trial court erred in denying the motion to suppress[.]
>
> **GROUND TWO:** Petitioner's Constitutional rights were violated because social worker Gula was permitted to give expert testimony in violation of Evid[.] R[.] 702 and testimony that improperly bolstered H[.]S[.]'s credibility.
>
> **Supporting Facts:** The State did not prepare a written report summarizing the expert witness' testimony[.] The defense objected preserving this for appeal[.] The social

---

[1] Harris attempted to file his appeal earlier, but his documents were received on April 4, 2018 – two days after the deadline.  (Doc. No. 1-2.)  The letter from the Supreme Court of Ohio stated the Clerk's Office is not permitted to file untimely documents.  (*Id.*)  However, the letter stated that since his notice of appeal indicated his appeal involved a felony, he could file a motion for delayed appeal.  (*Id.*)

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until July 10, 2018, Harris states that he placed it in the prison mailing system on June 29, 2018.  (Doc. No. 1 at 17.)  Thus, the Court will consider the Petition as filed on June 29, 2018.

7

worker improperly testified as to the truthfulness of the victim by saying, "I didn't have any concerns about her [H.S] not being truthful with me at that point." (Tr 1435) She also testified that H.S. described grooming activity and that typically a child's abuser is someone known to them. Petitioner was ambushed by this testimony and had no way to prepare a defense to it as it was not previously disclosed[.] The jury was led to believe this was a neutral witness who found H.S.'s allegations credible[.] This violates Petitioner's rights to a fair trial and due process of law[.] The Court of Appeals improperly relied on caselaw that an expert witness may testify that the behavior of an alleged child victim of sexual abuse is consistent with behavior in sexually abused children[.] This is not the case here where the social worker says H[.]S[.] is being truthful.

**GROUND THREE:** Petitioner's convictions were not supported by sufficient evidence, and the trial court erred by denying his motion for acquittal.

**<u>Supporting Facts:</u>** Petitioner was denied due process of law by being convicted against the sufficiency of the evidence. This case is full of inconsistent statements and wholly insufficient testimony to support H.S.'s allegations. This case hinges upon H.S.'s testimony who denied the allegations to Det. Strickler in Nov., 2014 (Tr 1075, 1135-1136). It was all a big lie. Id [sic] H.S.'s brother does not believe it ever happened. He did not see anything[.] H.S. made her accusations to Joanna who did nothing about it for months. Joanna never saw any inappropriate behavior by Harris towards H[.]S. There is insufficient evidence of rape with only the alleged victim's testimony, H.S.'s own testimony on Count 9 varies from the indictment[.] For all these reasons this case should be reversed[.]

**GROUND FOUR:** Petitioner's convictions were against the manifest weight of the evidence.

**<u>Supporting Facts:</u>** H[.]S[.]'s allegations were fabricated due to evidence that H[.]S. wanted to be emancipated, was upset with Petitioner for not letting her go to a late night party, that she wanted to be with C, that Petitioner wanted to meet C's parents, and that H.S. was furious when Petitioner filed a missing persons report because she ran away for a week. All of the factors in weighing weight of the evidence go against H.S. H.S. had a motive to lie. She was mad at Petitioner. H[.]S[.] was impeached by her prior and varying statements to different individuals at different times. The circumstantial evidence is weak. There is no forensic or DNA evidence that would substantiate H.S.'s allegations. The first jury heard the same evidence and could not reach a verdict against Petitioner. At the first trial (but not the second), C's mom testified that H.S. & C would would [sic] frequently lie to her (Tr. 395-406). This shows the girls were willing to lie to get what they wanted. These convictions go against the weight of evidence[.]

**GROUND FIVE:** Petitioner's federal Constitutional right to a speedy trial and due process were violated, and his conviction should be vacated and dismissed.

**Supporting Facts:** Petitioner was arrested on January 20, 2015[.] Cleveland Municipal Court set bond at #200,000 [sic] which was posted on January 22, 2015 (6 speedy trial days elapsed 1/20 1/22/15). From January 22, 2015 to April 3, 2015 (arraignment), an additional 71 speedy trial days elapsed. Speedy trial time resumed after retained counsel withdrew, and the court appointed new counsel on 7/15/15. Petitioner was re-arrested on 9/22/2015 on an alleged warrant from California. Cuyahoga County Sheriff Department failed to take Petitioner before a magistrate to see if the arrest is lawfully or unlawfully made, without a bail hearing, violated Petitioner's rights to a speedy trial[.] Petitioner filed a motion on 10/7/15 for release on bond that the court denied on 11/3/15. The record reflects that there was no copy of the warrant produced at the 12/7/15 hearing (Tr. 58-59). California warrant mandates a hearing. This was never addressed by the Court of Appeals[.] Petitioner contends that he was held beyond the statutory time limit of 270 days in this case to go to trial[.] After the first trial ended in a hung jury, Petitioner remained in prison over 6 more months from 4/13/16 to 10/24/16.  This violates his speedy trial rights.

**GROUND SIX:** The trial court erred by granting the State's oral motion to amend Counts 12-15 of the indictment after the close of the State's case in chief which deprived Petitioner of a fair trial and violated his due process rights.

**Supporting Facts:** The State was allowed to amend the dates of Counts 12-15 after the close of evidence in the second trial of these charges. (Tr. 1459-1460) The State sought this amendment upon realizing that H.S.'s testimony in the second trial did not support convictions on these charges as they were originally indicted by the grand jury. Petitioner submits that a failure of justice resulted when the trial court permitted the State to amend the dates of these counts after the close of evidence. This case had already been tried once before and resulted in a hung jury. To allow the State to seek and obtain an amendment after the close of evidence in the second trial of these charges was untimely and violated Petitioner's rigth [sic] to due process and a fair trial.  The amendment enabled the State to secure convictions on these counts that would be otherwise unsupported by the testimony given at trial, resulting in prejudice to Petitioner. The Court of Appeals ignored these violations of due process and a fair trial by instead focusing on the defense strategy of denial of the charges. But they fail to recognize that Petitioner had a complete defense to these charges when H.S.'s testimony failed to support these charges. This Honorable Court should grant this writ so the Court of Appeals and other courts will not be tempted to violate other defendants' rights not to use illegal amendment of indictments to secure a conviction.

**GROUND SEVEN:** Petitioner received ineffective assistance of counsel from both trial and appellate counsel for violating his Sixth Amendment of the United States Constitution right to effective assistance of counsel.

**Supporting Facts:** All of Petitioner's trial counsel: Oscar Trivers, J. Charles Ruiz-Bueno, Mark Spadaro, & Lisa Rankin failed to challenge the out of state warrant from California filed on 9-22-15. The Cuyahoga County Sheriff Department failed to take Petitioner before a magistrate of the county in which the arrest is made, who shall conduct a hearing determining if the arrest is lawfully or unlawfully made, if the

offense is bailable, and if the defendant has not been admitted to bail the court must set bail as provided in Crim.R. 46 and the Interstate Agreement on Detainers. Petitioner received a total of 435 days of Cuyahoga County Jail Time Credit, and under Crim.R. 16 discovery it is shown that Petitioner had Los Angelos [sic] Police Department investigative report shows the complaint was filed on 1-16-2015 and date of offense was on or about 7-1- 1991. But the arrest warrant says date of offense was 8-1-2010. Petitioner was transported from Ohio to California on 4-28-2017. Trial was held on 12-6-2017. Petitioner's counsel objects to the Statute of Limitation has expired. Petitioner was not in the State of California 8-1-2010 to commit the crime, and the California Supreme Court Judge Bernie L. LaForteza corrected the error in the complaint to 7-1-1991. The case was dismissed. This ineffectiveness of trial counsel to object to this plain error cost Petitioner his right to speedy trial and impeded his defense. This error was compounded when appellate counsel, Joseph V. Pagano failed to raise this error on appeal. This court can now recognize this plain error under Crim.R. 52(A).

(Doc. No. 1.)

On September 27, 2018, Warden Neil Turner ("Respondent") filed his Return of Writ. (Doc. No. 6.)   Harris filed a Traverse on October 22, 2018.[3]   (Doc. No. 7.)    Respondent filed a Reply to the Traverse on November 2, 2018.  (Doc. No. 8.)

### III. Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim

---

[3] One of the documents Harris attached to his Traverse (Doc. No. 7-5) contains medical records for H.S. and contain her full name and birth date.  The Court therefore SEALS Doc. No. 7-5.

may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62

(6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.    Application to Petitioner

### 1.    Grounds One through Three, Five, and Six

Respondent argues Grounds One through Three, Five, and Six are procedurally defaulted because, although Harris raised them on direct appeal to the state appellate court, he failed to timely appeal to the Supreme Court of Ohio and leave to file a delayed appeal was denied.[5]  (Doc. No. 6 at 28-30, 34-36, 40-41, 49-50, 58-59.)  Respondent further maintains Harris has failed to show either cause and prejudice to excuse the default or actual innocence.  (*Id.*)

---

[5] Respondent also argues Grounds One, Two, Five, and Six are precluded from habeas relief.  (Doc. No. 6 at 26-28, 34, 48-49, 57-58.)  Further, with respect to Ground One, Respondent argues Harris attempted to raise an Equal Protection Clause claim in his Traverse, and so it is not properly before this Court.  (Doc. No. 8 at 1-2.)  In addition, in his Traverse Harris "move[d] to have this California ruling added to the record in this action to show that he was never lawfully indicted in California [sic] therefore he could have been lawfully held by Cuyahoga County for this false warrant."  (Doc. No. 7 at 3.)  Respondent asserts, "Harris cannot challenge the constitutionality of his arrest in an unrelated, collateral criminal case from California in his current petition."  (Doc. No. 8 at 2-3.)  Where an argument is raised for the first time in a traverse rather than a habeas petition, it is not properly before the district court.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Therefore, the Court will not address Harris's Equal Protection Clause claim or his "motion" to add a California ruling to this record.

Harris fails to address the issue of procedural default in either his Petition or Traverse.  (Doc. Nos. 1, 7.)

Harris's first ground for relief asserts the trial court violated his Fourth and Fourteenth Amendment rights by denying his motion to suppress.  His second ground for relief asserts his "Constitutional rights were violated" when the trial court allowed a social worker to provide expert testimony in violation of Fed. R. Evid. 702 and her testimony improperly bolstered the victim's credibility.  Harris's third ground for relief alleges his convictions were not supported by sufficient evidence, and the trial court erred in denying his motion for acquittal.  Harris's fifth ground for relief asserts his federal constitutional right to a speedy trial and due process were violated.  Finally, Harris's sixth ground for relief asserts the trial court erred by granting the State's oral motion to amend certain counts in the indictment after the close of the State's case in chief, depriving him of a fair trial and violating his due process rights.  (Doc. No. 1.)

As set forth *supra*, Harris raised each of the above claims on direct appeal to the state appellate court.  (Doc. No. 6-1, Ex. 41.)  The state appellate court affirmed Harris's conviction and sentence on February 15, 2018.  (Doc. No. 6-1, Ex. 45.)  Harris failed to timely appeal to the Supreme Court of Ohio and, instead, filed a motion for leave to file a delayed appeal on April 17, 2018.  (Doc. No. 6-1, Ex. 46, 47.)  On June 6, 2018, the Supreme Court of Ohio denied Harris's motion for leave to file a delayed appeal and dismissed the case.  (Doc. No. 6-1, Ex. 48.)

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1).  The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4).  However, where (as here) the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an

14

unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*. A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id*. Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4) (c). **Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.**

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (emphasis added); *accord Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012) ("The timeliness requirements for an appeal to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."); *Carman v. Ohio*, No. 1:14 CV 2060, 2015 WL 1189084 (N.D. Ohio Mar. 16, 2015); *Crutchfield v. Warden*, No. 1:13-cv-438, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid dismissal).

The Court finds Harris's failure to file a timely appeal from the February 15, 2018 state appellate court decision to the Ohio Supreme Court, coupled with the Ohio Supreme Court's denial of a motion for delayed appeal, resulted in a procedural default.[6] Therefore, Grounds One through Three, Five, and Six are procedurally barred unless Harris "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result

---

[6] As noted above, Harris fails to address the issue of procedural default in either his Petition or Traverse.

in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

Harris does not offer any argument that there is cause and prejudice to excuse the default of these claims.  (Doc. No. 1; Doc. No. 7.)  The Court notes that, in his motion for leave to file a delayed appeal, Harris explained: (1) he "was out of the State of Ohio fighting California criminal charges from April 28 2017 [sic] until February 8, 2018;" (2) his appellate attorney did not send him notice of the state appellate court's decision until March 17, 2018; and (3) he did not receive the notice of the state appellate court's decision until March 23, 2018.[7]  (Doc. No. 1-2; Doc. No. 6-1, Ex. 47.)  Harris does not argue in these proceedings, however, that these circumstances constitute cause to excuse the default of his habeas claims.

Furthermore, while the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal." *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).  Here, Harris had no constitutional right to counsel on a discretionary appeal to the Supreme Court of Ohio. *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  Thus, any purported failure of his attorney to appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

The failure of an appellate counsel to timely inform a petitioner of a state appellate court decision can constitute ineffective assistance of counsel. *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d

---

[7] Harris had ten days from the date he received notice of the state appellate court's decision to file his appeal timely.

426, 433 (6th Cir. 2006) ("[C]ounsel has a duty to inform the accused of the resolution in a proceeding in a timely fashion so that the accused retains his control over the decision to appeal."). However, ineffective assistance of counsel can only serve as cause to excuse procedural default if the underlying claim of ineffective assistance of counsel is not itself defaulted. *See Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Here, Harris did not present a claim of ineffective assistance of counsel based on appellate counsel's failure to inform him timely of the state appellate court's decision to the state courts, and the time to do so has now expired.[8] Thus, any suggestion that ineffective assistance of counsel provides cause to excuse the default of these claims is without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017).

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,

---

[8] Under Ohio App. R. 26(B), an application for reopening must be filed with the state appellate court within 90 days of the journalization of the appellate court's decision, unless "the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). But the Supreme Court of Ohio has routinely enforced the 90-day deadline set in 26(B), finding it a reasonable procedural requirement. *State v. Gumm*, 814 N.E.2d 861 (2004); *see also State v. Lamar*, 812 N.E.2d 970 (2004). Thus, the Court finds "any attempted return to state court with the ineffective assistance of appellate counsel claim would be futile." *Rice v. Welch*, No. 3:10 CV 1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014) (finding an ineffective assistance of appellate counsel claim to be procedural defaulted where a petitioner did not file a Rule 26(B) application and did not provide any reason for his failure to do so).

17

or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id*. at 316.

Here, Harris does not assert he is actually innocent, although he maintains H.S. fabricated the allegations. (Doc. No. 1 at 10; Doc. No. 1-4 at 9.)  However, he fails to present any new, reliable evidence of his innocence.  Therefore, the Court finds Harris has failed to demonstrate the procedural default of Grounds One, Two, Three, Five, and Six should be excused on the basis of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Grounds One, Two, Three, Five, and Six be DISMISSED as procedurally defaulted.

### 2.    Ground Seven

In his seventh ground for relief, Harris asserts he received ineffective assistance of trial counsel and appellate counsel, violating his Sixth Amendment right to effective assistance of counsel.  (Doc. No. 1 at 13.)  He maintains he did not exhaust this claim because he "did nto [sic] learn of this error until he received a ruling from the Ohio Disciplinary counsel tha [sic] advised him to pursue this remedy in court and not with the disciplinary counsel."  (*Id.*)

Respondent asserts Harris failed to fairly present and exhaust his ineffective assistance of counsel claims in state court, and his "inexcusable procedural defaults further preclude habeas review."  (Doc. No. 6 at 63-64.)  In his Traverse, Harris did not address procedural default of Ground Seven.  (Doc. No. 7.)  In his Reply to the Traverse, Respondent maintains, "Harris does not contest that he is not entitled to federal habeas relief based on his seventh relief ground."  (Doc. No. 8 at 5.)

As stated above, a petitioner may procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 848. If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle,* 456 U.S. at 125 n. 28; *see also Coleman*, 501 U.S. at 731–32; *Lovins*, 712 F.3d at 295. While confused with exhaustion, procedural default and exhaustion are two distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

The Court finds Harris's failure to fairly present his ineffective assistance of counsel claims to the state courts resulted in a procedural default.

With respect to the alleged ineffective assistance of trial counsel, the trial court appointed different counsel to represent Harris on appeal. (Doc. No. 6-1, Ex. 39.) Any ineffective assistance of trial counsel claims could have been raised on direct appeal but were not. Therefore, Harris's ineffective assistance of trial counsel claims are procedurally defaulted. *Engle*, 456 U.S. at 125 n.28.

The Court construes Harris's statement that he did not learn of this error until he received a ruling from the Ohio Disciplinary Counsel advising him to pursue his claim in court and not with the Ohio Disciplinary Counsel as an attempt to establish cause for the procedural default. But Harris was represented by counsel before the state appellate court; therefore, any lack of knowledge on Harris's part still would not excuse the failure to raise any ineffective assistance of trial counsel claim on direct appeal.

19

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016). However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

Harris admits he has not presented any claim of ineffective assistance of appellate counsel to the state courts. Ohio law provides a procedural mechanism for raising claims of ineffective assistance of appellate counsel: App. R. 26(B). *See Stojetz v. Ishee*, 389 F. Supp. 2d 858, 898–99 (S.D. Ohio 2005); *White v. Shewalter*, No. 1:10CV1265, 2012 WL 2711463, at **9-10 (N.D. Ohio March 14, 2012), *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012). Harris failed to file a 26(B) application, and as discussed *supra*, the time to do has now expired. Therefore, Harris's claims of ineffective assistance of appellate counsel are themselves procedurally defaulted and cannot serve as cause to excuse the procedural default of Harris's ineffective assistance of trial counsel claims.

With respect to cause to excuse the procedural default of Harris's ineffective assistance of appellate counsel claims, to the extent Harris's statement that he was not aware of this error until he received the Ohio Disciplinary Counsel's ruling telling him to pursue a remedy in court is a claim of ignorance of the law, ignorance of the law is insufficient to establish cause to excuse a procedural default. *Bonilla*, 370 F.3d at 498. Likewise, Harris's *pro se* status or any ignorance of procedural requirements are

20

also insufficient to establish cause to excuse the procedural default of his ineffective assistance of counsel claims. *Id.*

A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533–34 (1986). As Harris is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice. *Id.*; *see also Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

Again, Harris does not assert he is actually innocent, although he maintains H.S. fabricated the allegations. (Doc. No. 1 at 10; Doc. No. 1-4 at 9.) However, he fails to present any new, reliable evidence of his innocence. Therefore, the Court finds Harris has failed to demonstrate the procedural default of Ground Seven should be excused on the basis of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground Seven be DISMISSED as procedurally defaulted.

### IV. Cognizability

In his fourth ground for relief, Harris asserts his convictions are against the manifest weight of the evidence. (Doc. No. 1.) Respondent asserts manifest weight of the evidence claims are not cognizable on federal habeas review. (Doc. No. 6 at 46-47.) In his Traverse, Harris did not respond to Respondent's assertion that his manifest weight of the evidence claim is non-cognizable on federal habeas review. (Doc. No. 7.) In his Reply to the Traverse, Respondent maintains, "Harris does not contest that his manifest weight of the evidence claim is not a cognizable ground for federal habeas relief." (Doc. No. 8 at 4.)

It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12

21

CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."). Under Ohio law, an argument a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess,* 2006 WL 2090093, at *7 (quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Harris's conviction was against the manifest weight of the evidence. *See id.*

The Sixth Circuit has construed manifest weight of the evidence claims as sufficiency of the evidence claims on habeas review. *Nash*, 258 F. App'x at 764 n.4 (Petition asserted a manifest weight of the evidence claim, not an insufficiency of the evidence claim, but the Sixth Circuit interpreted petition "as a complaint that the state court erroneously found [Petitioner's] conviction to be supported by sufficient evidence."). Here, Harris raised a sufficiency of the evidence claim in Ground Three, and that claim is procedurally defaulted.

Accordingly, and for all the reasons set forth above, it is recommended Ground Four be DISMISSED as non-cognizable.[9]

---

[9] Ground Four is also procedurally defaulted for the reasons discussed *supra* with respect to Grounds One through Three, Five, and Six.

### V. Request for Evidentiary Hearing

In his Traverse, Harris "requests a hearing to resolve these disputed matters of fact and law and/or immediate release from imprisonment for the reasons stated herein."  (Doc. No 7 at 1.)  He does not advance any further argument or explanation as to this request.

"[A] district court shall not hold an evidentiary hearing on a habeas claim unless the petitioner, who failed to develop the factual basis of the claim in state court, 'shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Freeman v. Trombley*, 483 Fed. App'x 51, 66 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). "Diligence for purposes of § 2254(e)(2) depends on 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.'" *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2012) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004)).

The Court finds Harris has failed to provide any basis for an evidentiary hearing.  He has not provided any meaningful argument supporting this request.  Specifically, Harris has not specified what evidence or testimony he would present, nor has he provided any argument which demonstrates why an evidentiary hearing is required.

Accordingly, it is recommended the Court find an evidentiary hearing is not warranted and deny Harris's request for the same.

### VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Date:  February 10, 2020                                 *s/ Jonathan Greenberg*
                                                         Jonathan D. Greenberg
                                                         United States Magistrate Judge

23

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).